UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

JAMES WELLS,

                Petitioner,                NOT FOR PUBLICATION
                                                            **MEMORANDUM & ORDER**
          – against –                   06-CV-857 (CBA)

WILLIAM BROWN, Superintendent at
Eastern New York Correctional
Facility,

                Respondent.

----------------------------------------------------------x
AMON, United States District Judge.

      Before the Court is petitioner James Wells' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition is denied.

**I. Background**

      Wells was convicted on August 8, 2000 of one count of Manslaughter in the First Degree under N.Y. Penal Law § 125.20[1] and two counts of Reckless Endangerment in the First Degree under N.Y. Penal Law § 120.25. He was sentenced as a second felony offender to concurrent prison terms of sixteen years on the manslaughter count and five years on the reckless endangerment counts.

      **A. Facts Elicited at Trial**

      The evidence presented at trial established that Rondaya Leak and her boyfriend Patrick White were on Linden Boulevard, in Brooklyn, at approximately 10:00 p.m. on August 10, 1999, when they saw Nikia Dingle exit a car near the intersection of Linden Boulevard and Drew

Street. Dingle began to cross Linden Boulevard heading towards the McDonald's on the other side. (Tr. at 44-46, 57, 73, 78 (Leak); 138-139, 159, 162, 169-70 (White).) Wells, who was in the driver's seat, also exited the car, muttered he was "tired of this bullshit," and removed two small children from the back seat and placed them on the sidewalk. (Tr. 46-47 (Leak); 139 (White).) Wells got back in the car and drove away. (Tr. 46, 48, 76 (Leak); 139-40, 172, 176 (White).) Leak and White told Dingle that Wells left the children on the sidewalk and drove away. Dingle crossed back to the other side of Linden Boulevard where the children were. (Tr. 47-49, 79-80 (Leak); 140, 142-43,174,176-77,196 (White).) Meanwhile, Wells made a u-turn at the next intersection. As he approached Dingle, he swerved towards her. (Tr. 120 (Leak); 141 (White).) Dingle threw a bottle at Wells' car and shattered the windshield. (Tr. 49, 61, 77, 79, 80-81, 119-20, 122 (Leak); 140-42, 147-50, 173-77, 181-82 (White).) Wells made another u-turn and stopped the car near the children. (Tr. 50 (Leak); 142-43 (White).) As Dingle reached the vicinity of the median strip nearest to the children, Wells got out of the car with a "club," a steel steering-wheel locking device. (Tr. 50, 52, 64, 98 (Leak); 143-44, 147, 154-55 (White).) Lawrence Johnson, who was driving a car stopped at a red light on Drew Street, and Raphael Innis, who was walking down Linden, both observed Wells and Dingle arguing. (Tr. 499-501 (Innis); 204-205 (Johnson).) Cursing, Wells took the club and threw it at Dingle. (Tr. 50-51, 97 (Leak); 144, 148 (White); 206 (Johnson); 501 (Innis).) Dingle darted into Linden Boulevard, weaving to avoid the club, and was struck by a car being driven by Andre Stewart, which was traveling in the middle lane. (Tr. 51-52, 55 (Leak); 144-145 (White); 208, 229-230 (Johnson); 501 (Innis).) Stewart was driving a rented car with his fiancee at 30-35 miles per hour when he struck Dingle. (Tr. 306 (Stewart); 409 (Benton); 554-58 (Coulon).) Stewart tested negative for

2

alcohol at the scene. (Tr. 597 (Maher); 616-17 (DiGristina).) Wells told the police that he threw the club in Dingle's direction but did not see her get hit because he had turned around. (Tr. 349 (Maher); 602 (Halpin).) The Police arrested Wells after speaking with him and other eyewitnesses. (Tr. 259-63 (Burke); 345-47 (Halpin).)

### B. Post-Conviction Proceedings

Wells appealed his conviction to the New York Appellate Division, Second Judicial Department ("Appellate Division"). He brought two claims in his direct appeal: a) that the evidence at trial was insufficient to sustain his conviction of first-degree manslaughter because it did not establish that he had intended to cause serious physical injury, and b) that trial counsel was ineffective for not making a timely application for submission to the jury of Manslaughter in the Second Degree as a lesser included offense.

The Appellate Division unanimously affirmed Wells' conviction on June 2, 2003, holding that the insufficient evidence claim was unpreserved, and that Wells was not denied the effective assistance of counsel. People v. Wells, 760 N.Y.S.2d 343 (N.Y. App. Div. 2003). On July 25, 2003, the New York Court of Appeals denied Wells' application to appeal the Appellate Division's order. People v. Wells, 100 N.Y.2d 589 (N.Y. 2003).

Subsequently, on March 4, 2004, Wells applied to the Appellate Division for a writ of *error coram nobis* on the ground of ineffective assistance of appellate counsel. He claimed that appellate counsel was ineffective for failing to argue: a) that the Molineux ruling, which permitted the introduction of Wells' prior acts of abuse, denied him due process, b) that the Sandoval rulings, which allowed the prosecutor to cross-examine Wells regarding prior crimes and uncharged acts of abuse, denied him due process, c) that the prosecutor made false and

3

prejudicial comments during summation, and d) that trial counsel was ineffective for failing to move, at the close of the People's case, for dismissal of the first-degree manslaughter count on the grounds that intent was not proven and Dingle's death was unforeseeable. On June 7, 2004, the Appellate Division denied Wells' *coram nobis* application, holding that Wells had failed to establish that he was denied effective assistance of appellate counsel. People v. Wells, 777 N.Y.S.2d 749 (N.Y. App. Div. 2004). Wells' application to appeal the denial of his *coram nobis* application was denied on September 13, 2004. People v. Wells, 3 N.Y.3d 713 (N.Y. 2004).

Thereafter, Wells moved for an order, pursuant to New York Criminal Procedure Law § 440.10, vacating the judgment of conviction on the ground of ineffective assistance of trial counsel. Wells argued counsel was ineffective for failing to familiarize himself with the facts of the case, conduct investigations, and present testimony, in order to establish Dingle's violent behavior and counter the prosecutor's depiction of his abusiveness. The Supreme Court denied the § 440 motion on July 1, 2005, holding that Wells had received effective assistance of trial counsel under both the federal and state standards. People v. Wells, No. 2000-07555, slip op. (N.Y. Sup. Ct. July 1, 2005). Wells' application for leave to appeal the denial of his § 440 motion to the Appellate Division was denied on October 24, 2005.

Wells timely filed his habeas petition on February 6, 2006, presenting issues that he exhausted in his *coram nobis* petition and his § 440.10 motion. He claims that: 1) his trial counsel was ineffective for failing to investigate and present evidence of the victim's violent behavior to defend against the people's "domestic abuse based prosecution," and 2) his appellate counsel was ineffective for failing to argue that a) the Molineux ruling, which permitted the introduction of Wells' prior acts of abuse, denied him due process, b) the Sandoval rulings,

4

which allowed the prosecutor to cross-examine Wells regarding prior crimes and uncharged acts of abuse, denied him due process, c) the prosecutor's false and prejudicial comments during summation denied him due process, and d) trial counsel was ineffective for failing to move, at the close of the People's case, for dismissal of the first-degree manslaughter count on the grounds that intent was not proven and Dingle's death was unforeseeable.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Under this

standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### III. Discussion

#### A. Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, petitioner must show that his counsel's performance was objectively deficient and the deficiency actually prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also, e.g., United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005). Establishing deficient performance requires petitioner to overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and was the result of trial strategy, not error. Strickland, 466 U.S. at 689; see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998). To establish actual prejudice, Wells must show there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

A review of the record generally shows that Wells' counsel was not deficient. In his opening statement, counsel presented a defense that Wells discarded the club and did not throw it at Dingle, and that Dingle's death resulted from an automobile accident which defendant could

not have foreseen. (Tr. 24-7.) He supported this defense with extensive cross-examination of Stewart, the driver of the car that hit Dingle. (Tr. 439-45.) In his summation, counsel argued that Dingle was killed not by defendant's acts but by Stewart's conduct behind the wheel. (Tr. 439-45.) Furthermore, Wells was acquitted of second degree murder, the most serious charge in the indictment. Counsel was also successful in gaining a favorable Sandoval ruling, limiting the prosecution's ability to cross-examine the defendant regarding some of his prior convictions for the general purpose of attacking his credibility. (Tr. 5-8.) Given counsel's overall performance it cannot be said that his "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." See Cohen, 427 F.3d at 167 (quoting United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004), which, in turn, quoted Strickland, 466 U.S. at 686).

In this case, Wells claims that trial counsel's failure to familiarize himself with the facts of the case, conduct an investigation, obtain police records, and call favorable witnesses – all in order to defend against allegations of domestic abuse – constitute constitutionally ineffective assistance of counsel. He argues that counsel should have presented evidence of Dingle's violent behavior to defend against the prosecutor's depiction of him as the abuser. (Id. at 13-14.) Wells presented these claims in his § 440.10 motion and the trial court denied them on the merits, holding that Wells received effective assistance of trial counsel under both the federal and state standards. People v. Wells, No. 2000-07555, slip op. at 12. The court will review the state court's holding with AEDPA's deference, and may grant relief only if the decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d).

7

The state court properly held that Wells had failed to demonstrate that counsel's alleged failure to call witnesses to testify about Dingle's violence "was not part of a reasonable trial strategy." People v. Wells, No. 2000-07555, slip op. at 10. The affidavit submitted by counsel to the 440.10 court makes clear that Wells' family reported to him that Dingle was often the aggressor, but states that he choose not to focus on domestic violence in defending Wells' case. (Resp's Ex. P.) Accordingly, in his summation, counsel portrayed Wells and Dingle as having a committed and loving relationship and downplayed evidence of its storminess. (Tr. 841-45.) Indeed, evidence of Dingle's abusiveness would likely have supported the prosecution's theory that the relationship was deeply troubled and that Wells threw the club at Dingle intentionally, and therefore weakened Wells' defense that he merely discarded the club. Furthermore, as the state court noted, attacking a deceased victim's character at trial is extremely risky, particularly when the prosecution sought to emphasize Wells' selfishness and lack of concern for the victim. See People v. Wells, No. 2000-07555, slip op. at 10.

The Sixth Amendment does not empower courts to "second guess reasonable professional judgments" by counsel. Jones v. Barnes, 463 U.S. 745, 754 (1983); see also Jackson, 162 F.3d at 85. Because Wells' counsel rejected pursuing a domestic abuse-based defense only after due consideration, and because evidence that Dingle was aggressive towards Wells would have arguably supported the prosecution's theory of intent, counsel's decision to forgo this defense was not constitutionally deficient. See Wiggins v. Smith, 593 U.S. 510, 521-23 (2003) (counsel's decision not to conduct further investigation is reasonable when counsel has evidence suggesting it would not be helpful); Strickland, 466 U.S. at 690-91 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation"); Burger v. Kemp, 483 U.S. 776, 794 (1987) (counsel's decision not to introduce certain evidence is reasonable when the evidence can potentially damage defendant's case). With counsel's wide degree of latitude to form defendant's case, a decision justified by some plausible trial strategy, even if imprudent in hindsight, does not warrant relief. See Kimmelman v. Morrison, 477 U.S. 365, 385 (1986); United States v. Cronic, 466 U.S. 648, 665 (1984) (though counsel could have investigated more thoroughly, the court is only concerned with what is constitutionally compelled). Accordingly, Wells has not demonstrated that counsel's performance was constitutionally deficient.

Furthermore, even if counsel's decision not to present evidence of Dingle's behavior was unreasonable, it did not actually prejudice Wells. Wells argues that his conviction depended on evidence of past domestic abuse. He argues that evidence at trial showed that the club was thrown "in a direction opposite of where Dingle crossed." (Pet. 15.) He suggests evidence of prior domestic abuse was necessary for the prosecution to establish that Dingle ran into the street because she feared his abusive tendencies. This was never an argument presented or pressed by the prosecutor. The eyewitness testimony presented at trial suggested that Dingle ran into the street not because she feared Wells' abusiveness but to avoid being hit by the club he threw at her.[1] This latter theory was the one argued by the prosecutor in summation.

---

[1] All of the prosecution's witnesses who saw Wells throw the club testified that he threw it at Dingle and she ran away to avoid being hit. Leak testified that as Wells was coming towards Dingle he "threw the club at her" and she tried to avoid it by "running back and forth." (Tr. 50-51 (Leak).) White testified that Wells "threw it at her" and she "tried to weave like from getting hit." (Tr. 144 (White).) Johnson testified that Wells "wound up and basically threw it at her," when "approximately a millisecond before or after releasing this object, this woman turned around...and started running." (Tr. 206-7 (Johnson).) Innis testified that he saw defendant

9

Because Wells failed to demonstrate either that trial counsel's performance was unreasonably deficient or that the deficiency was prejudicial, the state's court's rejection of the claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

**B. Ineffective Assistance of Appellate Counsel**

To prevail on a claim of ineffective assistance of appellate counsel petitioner must show that his counsel's performance was objectively deficient and the deficiency actually prejudiced his defense. See Smith v. Robbins, 528 U.S. 259, 284 (2000) (holding that the Strickland test is applicable to ineffective appellate counsel claims); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1990). To establish deficient performance, a petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that it was the result of trial strategy, not error. Strickland, 466 U.S. at 689; see also Jackson, 162 F.3d at 85. To establish actual prejudice, a defendant must show there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Wells claims that his appellate counsel was ineffective for failing to argue that: 1) the Molineux ruling, which permitted the introduction of Wells' prior acts of abuse, denied him due process, 2) the Sandoval rulings, which allowed the prosecutor to cross-examine Wells regarding prior crimes and acts of abuse, denied him due process, 3) the prosecutor made false and

---

"thr[o]w like a pipe or something...[a]t the girl that ran away from the car and...she jumped when it landed near her to avoid being hit and she ran two more steps and got hit." (Tr. 501 (Innis).)

10

prejudicial comments during summation, and 4) trial counsel was ineffective for failing to move, at the close of the People's case, for dismissal of the first-degree manslaughter count on the grounds that intent was not proven and Dingle's death was unforeseeable. (Pet. 16-22.) Wells raised these issues in his *coram nobis* motion. The state court rejected them on the merits holding that appellate counsel was effective under both the federal and state standards. People v. Wells, 777 N.Y.S.2d 749 (App. Div. 2004) (citing Jones v. Barnes, 463 U.S. 745, and People v. Stultz, 2 N.Y.3d 277 (N.Y. 2004)).

Because an appellate attorney has no duty to bring every "colorable" claim suggested by the defendant, petitioner must overcome a particularly steep hurdle in order to demonstrate that counsel's decision not to bring a claim was unreasonable. See Jones v. Barnes, 463 U.S. at 754. When an ineffective assistance of counsel claim is based on failure to raise viable issues, it generally succeeds "only when ignored issues are clearly stronger than those presented." Mayo, 13 F.3d at 533. On appeal, counsel argued that a) the evidence at trial was insufficient to sustain defendant's conviction of first-degree manslaughter because it did not establish that defendant had intended to cause serious physical injury, and b) trial counsel was ineffective for not making a timely application for submission to the jury of Manslaughter in the Second Degree as a lesser included offense. Because the claims that appellate counsel decided to omit lacked merit, the state court's holding that counsel was effective was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

    1. The *Molineux* ruling

11

Wells argues that the trial court permitted the prosecutor to introduce nine prior bad acts without finding that the introduction of these acts fell under the exceptions, established by People v. Molineux, 61 N.E. 286 (N.Y. 1901), to the general rule that prior bad acts are inadmissable. (Pet. 18.) Contrary to Wells' argument, the trial court properly permitted the introduction of evidence of his past abuse towards Dingle. While prior bad acts cannot be introduced to prove Wells' criminal predisposition, they can be properly admitted as relevant to prove intent, or establish the absence of an accident or mistake. See People v. James, 797 N.Y.S.2d 129 (N.Y. App. Div. 2005); Molineux, 61 N.E. at 291-93; People v. Shorey, 568 N.Y.S.2d 436, 436-37 (N.Y. App. Div. 1991).

If a prior bad act falls within one of the Molineux exceptions, as those at issue here do, it may be admitted into evidence so long as its probative value outweighs its prejudicial effect. See People v. Ely, 68 N.Y.2d 520 (1986). In this case, evidence of Wells' prior bad acts, which bore on the nature of his relationship with Dingle, was particularly probative with respect to the defense that Wells sought to establish–that he did not intentionally throw the club at Dingle. Furthermore, to limit prejudice to Wells, the trial judge instructed the jury to consider past acts of abuse only with regard to whether there "was a lack of accident or mistake as to defendant's state of mind" and "to understand the nature of the relationship of defendant and Ms. Dingle," not as "evidence of defendant's action, conduct, or lack thereof in the current incident." (Tr. 890-91.) Wells also refuted the evidence of prior incidents during his own testimony. (Tr. 687-89, 722-25, 744-55.) Because the probative value of Wells' prior bad acts outweighed potential prejudice to Wells, the state court properly allowed the acts to be introduced at trial.

Evidence of Wells' prior bad acts was properly admitted under Molineux, and,

12

accordingly, appellate counsel's decision not to challenge the ruling was not unreasonable or prejudicial. Therefore, the state court's rejection of this ground for Wells' ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

### 2. The *Sandoval* Rulings

Wells argues that the Sandoval rulings improperly permitted the prosecution to cross-examine him about his alleged prior bad acts, both charged and uncharged, when there was not a sufficient basis for the prosecutor to believe, in good faith, that Wells had committed these acts.[2] (Pet. 18-19.) He also argues that the prosecutor exceeded the scope of the Sandoval ruling and concocted two of the alleged acts. (Id.) Petitioner's claims are not supported by the record. Police reports and statements from Dingle's parents provided the prosecutor with a reasonable and good faith basis to question Wells about his prior acts. (Tr. 9-10, 15-22, 610-11, 626-28, 644-46.) Furthermore, the incidents about which the prosecutor questioned Wells fell within the scope of the Sandoval ruling. (Compare Tr. 16-21, 25-28 and Tr. 687-89, 722-25, 744-55.) The trial court properly permitted the prosecutor to question Wells about his prior bad acts because they were relevant to showing the nature of his relationship with Dingle, a lack of accident or mistake, and his motive. See Molineux, 61 N.E. at 291-93; Shorey, 568 N.Y.S.2d at 436-37.

---

[2]The court issued two separate Sandoval rulings. The first regarded the prosecution's ability to use unrelated prior convictions to generally attack Wells' credibility as a witness. (Tr. at 1-9.) The second regarded the prosecution's ability to attack Wells' credibility with cross-examination about prior uncharged instances of conduct regarding the volatile nature of his relationship with Dingle, evidence which the prosecution also offered as proof of motive and intent pursuant to Molineux. (Tr. at 213-28.) Defense counsel obtained a somewhat favorable ruling as to the former, and an unfavorable ruling as to latter. Wells seems to claim that appellate counsel should have raised both Sandoval rulings on appeal, but the substance of his argument goes only to the latter ruling.

13

Wells fails to demonstrate that a claim challenging the cross-examination or the Sandoval ruling would have been colorable. In fact, there was a sufficient basis to believe that Wells committed the alleged prior acts, the acts were properly introduced, and the prosecutor did not exceed the bounds of the Sandoval ruling. Appellate counsel's decision to omit this claim was, therefore, not unreasonable or prejudicial, and the state court's rejection of this ground for Wells' ineffective appellate counsel claim was not contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court.

### 3. The Prosecutor's Improper Remarks

Wells' claim that his appellate counsel should have raised a claim challenging the prosecution's allegedly improper remarks during summation also fails. Under New York law, a defendant is not denied a fair trial by the prosecution's summation remarks as long as the remarks "stay within the 'four corners of the evidence.'" See People v. Ashwal, 39 N.Y.2d 105, 109 (N.Y. 1976) (quoting Williams v. Brooklyn Elevated R. Co., 26 N.E. 1048, 1050 (N.Y. 1891)). In this case, Wells complains about the prosecutor's remarks regarding Wells' anger and intent during the events leading to Dingle's death (Tr. 852, 862, 864-67, 869-71, 873), his motive behind leaving the children on the corner (Tr. 856), Dingle's motive for throwing the bottle at his windshield (Tr. 861), Dingle's parents' credibility (Tr. 863), the fact that Dingle was looking at the children before she was hit (Tr. 868), and Stewart's lack of fault (Tr. 872). (Pet. 19-20.) Because these remarks were based on the evidence presented to the jury, they did not deny Wells a fair trial. Only three of the prosecutor's remarks – the remark that Wells lied about

14

how he used the club,[3] the biblical quotation,[4] and the remark about doing justice[5] – were arguably objectionable. However, because Wells' trial counsel failed to object to the first two remarks, and made only a general objection to the third, his claims regarding these remarks were likely to be found to be procedurally barred if appealed. See N.Y.C.P.L § 470.05(2). Furthermore, given the substantial evidence that Wells threw the club at Dingle intentionally he was not actually prejudiced by the prosecutor's remarks. Finally, the trial judge instructed the jury to consider only the evidence produced at trial, and to accept counsel's summation remarks only if they were "reasonable, logical, and consistent with the evidence." (Tr. 879). The prosecutor's remarks did not, therefore, deprive Wells of due process and a fair trial.

Because the claim regarding the prosecutor's remarks is not meritorious, appellate counsel's omission of the claim on direct appeal was not unreasonable or prejudicial. Therefore, the state court's rejection of this ground for Wells' ineffective appellate counsel claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

### 4. Trial Counsel's Failure to Move for Dismissal of the First-Degree Manslaughter Count on the Grounds that Intent was not Proven and Dingle's Death was Unforeseeable

Wells' claim that appellate counsel should have raised an ineffective trial counsel claim – based on trial counsel's failure to move for the dismissal of the First-Degree Manslaughter count

---

[3] "He [defense counsel] says the defendant picked up the club, and oops, oh my, and drops it. And the defendant told you that, that was an outright lie." (Tr. 851.)

[4] "Remember the Good Book, 'By their fruits ye shall know them.' By the defendant's actions and their results, you shall know him." (Tr. 871.)

[5] "By your verdict, do justice for Nikia Dingle. By your verdict, do justice for her family and her kids." (Tr. 874.)

15

on the grounds that the evidence was insufficient to show that he had the intent to cause serious physical harm to Dingle, and that Dingle's death was unforeseeable – fails. Because the evidence was sufficient to infer intent and causation, appellate counsel's omission of the claim on direct appeal was not unreasonable or prejudicial. The testimony that Wells threw a heavy steel club at Dingle during the heat of an argument, together with the testimony that before the argument he apparently tried to hit her with his car, and the testimony of past incidents in which Wells beat Dingle, permitted the jury to conclude that he intended to cause her serious physical injury when he threw the club. See People v. Aveille, 538 N.Y.S.2d 615 (N.Y. App. Div. 1989) (evidence showing that during an argument, the defendant threw a stone, approximately eight inches in length, at victim, was sufficient to show that he had the intent to cause serious physical injury).

Furthermore, with respect to the causation element, there appears to have been sufficient evidence introduced at trial to establish that when defendant threw the club at Dingle it was "reasonably foreseeable" that she would run into the street to avoid the club and get hit by oncoming traffic, resulting in fatal injuries. See People v. Kibbe, 35 N.Y.2d 407 (N.Y. 1974) (defendants were a sufficiently direct cause of victim's death when they left him intoxicated on the side of a road in sub-freezing weather, and victim was later hit by a truck); People v. Kern, 75 N.Y.2d 638 (N.Y. 1990) (defendants were a sufficiently direct cause of victim's death when they were chasing him and he got hit by a car after escaping onto a six-lane highway); People v. Hernandez, 82 N.Y.2d 309, 318-19 (N.Y. 1993) (defendant was a sufficiently direct cause of a police officer's death when the officer was shot by another officer who fired as defendant approached with a drawn gun); People v. Matos, 83 N.Y.2d 509, 510-12 (N.Y. 1994) (defendant

16

was held to be a sufficiently direct cause of the death of a police officer who fell down an airshaft while chasing defendant – after defendant had committed an armed felony – because it was "reasonably foreseeable" that he would be chased while escaping and someone would fall in hot pursuit across urban roofs in the middle of the night).

Because there was substantial evidence to establish Wells' intent to cause serious physical injury and causation, counsel's failure to move for dismissal of the first degree manslaughter charge was neither constitutionally unreasonable nor prejudicial. Therefore, an ineffective assistance of trial counsel claim on this basis would have lacked merit and therefore appellate counsel's decision to omit this claim did not constitute ineffective assistance. The state court's rejection of this ground for Wells' ineffective appellate counsel claim was, therefore, not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

Because all of the claims which Wells argues should have been raised by his appellate counsel were not meritorious, her decision not to bring the claims was not unreasonable or prejudicial and did not, therefore, constitute ineffective assistance of counsel. See Arena, 180 F.3d at 396. Moreover, counsel raised two non-frivolous claims which appear to have been stronger than the omitted issues. Thus, even if the Court had determined that the omitted claims were not entirely meritless, counsel's decision to omit them would not have been constitutionally deficient because "winnowing out weaker arguments on appeal and focusing...[on] at most a few key issues" is an essential component of effective litigation. See Jones v. Barnes, 463 U.S. at 751-51. Therefore, the state court's rejection of Wells' *coram nobis* motion was neither contrary to or an unreasonable application of clearly established Supreme Court, and does not warrant

habeas relief. 28 U.S.C. § 2254(d).

**IV. Conclusion**

Accordingly, Wells' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is hereby denied. A certificate of appealability will not be issued because Wells has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
May 15, 2008

Carol Bagley Amon
United States District Judge